### KERN'S BAKERY OF VIRGINIA, INC., PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 8428–71, 1297–73.   Filed July 18, 1977.

*Perry Shields,* for the petitioner.
*Jack D. Yarbrough* and *Wesley J. Lynes,* for the respondent.

WILBUR, *Judge:* Respondent has determined deficiencies in petitioner's Federal income tax for the taxable years 1968 to 1970, inclusive, in the amounts of $111,995.87, $84,692.83, and $389.20, respectively. Certain issues having been settled, the sole issue for decision is whether the petitioner's post-reorganization net operating loss carryover is reduced under the provisions of section 382(b),[1] thereby reducing petitioner's allowable net operating loss deductions for 1968 and 1969 by $277,623.56 and $22,091.23, respectively. The resolution of this question depends on whether the transferor corporations and the acquiring corporation, immediately before the reorganization, were owned substantially by the same persons in the same proportion.

## OPINION

All of the facts have been stipulated and are found accordingly.

Petitioner Kern's Bakery of Virginia, Inc., is a corporation organized and existing under the laws of Virginia. At the time of filing the petitions herein, petitioner had its principal office and place of business at Lynchburg, Va. Petitioner filed its corporate income tax returns for the taxable years 1968, 1969, and 1970 with the District Director in Richmond, Va.

Prior to July 31, 1966, two unrelated families, the Greers and the Browns, owned all the stock in three corporations: Kern's Bakery of Virginia, Inc., a Virginia corporation and petitioner herein; Kern's Bakery, Inc., a Tennessee corporation; and Brown, Greer Co., a North Carolina corporation. Each family owned 50 percent of the fair market value of the stock of each corporation as follows:

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended and applicable to the years in issue, unless otherwise stated.

| | Shares |
|---|---:|
| I. Kern's Bakery of Virginia, Inc. (petitioner): | |
|   A. Greers | 5,000 |
|     1. William C. Greer | 2,500 |
|     2. John L. Greer, Jr | 2,500 |
|   B. Browns | 5,000 |
|     1. J. Harry Brown | 1,200 |
|     2. Roy H. Brown, Jr. | 1,900 |
|     3. T.G. Brown III | 1,900 |
| II. Kern's Bakery, Inc.: | |
|   A. Greers | 375 |
|     1. William C. Greer | 162 |
|     2. John L. Greer, Jr. | 162 |
|     3. John L. Greer, Sr. | 1 |
|     4. John L. Greer as trustee for grandchildren | 30 |
|     5. John L. Greer as custodian for grandchildren | 19 |
|     6. Hamilton National Bank as trustee for Greers | 1 |
|   B. Browns | 375 |
|     1. J. Harry Brown | 90 |
|     2. Roy H. Brown Trust | 284 |
|     3. Hamilton National Bank as trustee for Browns | 1 |
| III. Brown, Greer Co.: | |
|   A. Greers | 500 |
|     1. William C. Greer | 250 |
|     2. John L. Greer, Jr. | 249 |
|     3. Hamilton National Bank as trustee for Greers | 1 |
|   B. Browns | 500 |
|     1. J. Harry Brown | 75 |
|     2. Roy H. Brown Trust | 424 |
|     3. Hamilton National Bank as trustee for Browns | 1 |

On July 31, 1966, these three corporations were reorganized in a tax-free merger as defined in section 368(a)(1)(A). Immediately prior to the reorganization, petitioner had an unused net operating loss of $558,026.58. Kern's Bakery, Inc., and Brown, Greer Co. had no net operating losses.

Subsequent to reorganization, the stock of petitioner, the acquiring corporation, was owned by the same two unrelated families, the Greers and the Browns. Each family owned 50 percent of the fair market value of 100,000 shares of stock as follows:

| | Shares |
|---|---:|
| I. Greers | 50,000 |
|   A. William C. Greer | 22,858 |
|   B. John L. Greer, Jr. | 22,831 |
|   C. John L. Greer, Sr. | 84 |
|   D. John L. Greer, Sr., as trustee for grandchildren | 2,520 |

| E. John L. Greer, as custodian for grandchildren | 1,596 |
| F. Hamilton National Bank as trustee for Greers | 111 |
| II. Browns | 50,000 |
| A. Roy H. Brown, Jr. | 1,900 |
| B. T. G. Brown III | 1,900 |
| C. J. Harry Brown | 10,785 |
| D. Hamilton National Bank et al., trustees under will of Roy H. Brown, Sr. | 35,304 |
| E. Hamilton National Bank as trustee for Browns | 111 |

The owners of the stock of the pre-reorganization Kern's Bakery of Virginia, Inc., the loss corporation, received as a result of such ownership, 10 percent of the fair market value of the stock of the post-reorganization Kern's Bakery of Virginia, Inc., petitioner.

Petitioner, in its 1968 and 1969 income tax returns, claimed net operating loss carryovers of $297,280.82 and $22,091.23, respectively. These deductions were based on the following computations by the petitioner:

NET OPERATING LOSSES

|  |  | Amount |
| --- | --- | --- |
| Year: | 1962 | $49,716.67 |
|  | 1963 | 101,960.22 |
|  | 1964 | 296,495.09 |
|  | 1965 | 46,115.68 |
|  | 1966 | 38,589.38 |
|  | Total | 532,877.04 |
| Less: Carryover claimed for 1967 |  | 213,504.99 |
| Amount available to carryover |  | 319,372.05 |
| Less: Carryover claimed for 1968 |  | 297,280.82 |
| Amount available to carryover |  | 22,091.23 |
| Less: Carryover claimed for 1969 |  | 22,091.23 |
|  |  | 0 |

Respondent, in his statutory notice of deficiency for the year 1968, determined that $558,026.58 in net operating loss was unused at the time of reorganization of the petitioner on July 31, 1966, and further determined that 50 percent of this net operating loss was available to carryover because of the application of section 382(b)(2). This determination resulted in the following computation by the respondent:

| Net operating loss at July 31, 1966 | $558,026.58 |
| --- | --- |
| Less: 50-percent reduction | 279,013.29 |
| Amount available to carryover | 279,013.29 |
| Less: Amount allowed for 1966 | 21,457.78 |

| | |
|---|---:|
| Amount available to carryover | 257,555.51 |
| Less: Amount allowed for 1967 | 237,898.25 |
| Amount available to carryover | 19,657.26 |
| Less: Amount allowed for 1968 | 19,657.26 |
| | 0 |

This computation resulted in the disallowance of net operating loss carryovers to 1968 of $277,623.56 and to 1969 of $22,091.23.

In a reorganization under the circumstances here present, a net operating loss carryover of the transferor *or* acquiring corporation may be subject to the limitations specified in section 382. Section 382(b)(1), requires a reduction in the loss carryover when the stockholders of the loss corporation, *as a result of owning stock in the loss corporation,* end up owning less than 20 percent of the fair market value of the outstanding stock of the acquiring corporation.

The required reduction, specified in section 382(b)(2), diminishes the net operating loss by 5 percent for each percentage point the required ownership falls below the 20-percent criteria.[2]

Since the stockholders of the pre-reorganization Kern's Bakery of Virginia, Inc., the loss corporation, received only 10 percent of the fair market value of petitioner as a result of

---

[2] SEC. 382. SPECIAL LIMITATIONS ON NET OPERATING LOSS CARRYOVER.
(b) CHANGE OF OWNERSHIP AS THE RESULT OF A REORGANIZATION.—

(1) IN GENERAL.—If, in the case of a reorganization specified in paragraph (2) of section 381(a), the transferor corporation or the acquiring corporation—

(A) has a net operating loss which is a net operating loss carryover to the first taxable year of the acquiring corporation ending after the date of transfer, and

(B) the stockholders (immediately before the reorganization) of such corporation (hereinafter in this subsection referred to as the "loss corporation"), as the result of owning stock of the loss corporation, own (immediately after the reorganization) less than 20 percent of the fair market value of the outstanding stock of the acquiring corporation,

the total net operating loss carryover from prior taxable years of the loss corporation to the first taxable year of the acquiring corporation ending after the date of transfer shall be reduced by the percentage determined under paragraph (2).

(2) REDUCTION OF NET OPERATING LOSS CARRYOVER.—The reduction applicable under paragraph (1) shall be the percentage determined by subtracting from 100 percent—

(A) the percent of the fair market value of the outstanding stock of the acquiring corporation owned (immediately after the reorganization) by the stockholders (immediately before the reorganization) of the loss corporation, as the result of owning stock of the loss corporation, multiplied by

(B) five.

owning stock in the loss corporation, respondent has determined that petitioner's net operating loss carryover should be reduced by 50 percent. Petitioner argues it is entitled to the full amount of the carryover, contending it is excepted from the required reduction by the following language of section 382(b)(3):

[The reduction] shall not apply if the transferor corporation and the acquiring corporation are owned substantially by the same persons in the same proportion.

The principal question before us is whether immediately prior to the reorganization, the acquiring corporation, petitioner, and the transferor corporations, Kern's Bakery, Inc., and Brown, Greer Co., were "owned substantially by the same persons in the same proportion."

Section 382(b) was designed to allow the full net operating loss carryover only when the stockholders of the predecessor loss corporation had a substantial continuing interest in the successor corporation. S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 53 (1954). The benefit of these carryovers, it was thought, should inure to those who actually suffered the loss. The minimum continuity of interest needed for the full carryover was set at 20 percent.[3] The Senate Finance Committee explained:

Subsection (b) is designed to prevent the liberalized carryover of net operating losses permitted in section 381 from being used by one corporation to acquire the total net operating loss carryovers of another corporation without giving up at least a 20 percent share to the stockholders of the corporation with the net operating loss carryover. If the stockholders of the loss corporation have a 20 percent or more interest in the successor corporation, it is felt there is a sufficient continuity of interest in the net operating loss carryover to justify permitting the entire net operating loss to carry over. * * * [S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 285 (1954).]

---

[3] However, sec. 382(b) takes into account only that stock of the acquiring corporation which is received by the shareholders of the loss corporation in the reorganization "as the result of owning stock in the loss corporation." It has been suggested that the reason for this limitation was to prevent shareholders of the loss corporation from temporarily buying shares in the acquiring corporation prior to the reorganization and thereby circumventing the 20-percent test. *Commonwealth Container Corp. v. Commissioner*, 48 T.C. 483, 492 (1967), affd. 393 F.2d 269 (3d Cir. 1968).

To the extent the shareholders of the loss corporation received less than a 20-percent interest in the successor corporation the net operating loss carryover was reduced under section 382(b)(2).

The statutory formula, however, depends largely on the relative asset value of the two corporations. Thus, in a merger between a small loss corporation and a large corporation, the shareholders of the smaller corporation may emerge with only a small percentage of the stock of the reorganized corporation, even where all of the shareholders involved have continued their equity position. Apparently, with a view toward alleviating this problem where both corporations are "owned substantially by the same persons in the same proportion," Congress enacted section 382(b)(3). See Asimow, "Detriment and Benefit of Net Operating Losses: A Unifying Theory," 24 Tax L. Rev. 1 (1968). Section 382(b)(3) thus reflects the overall purpose of section 382(b) by recognizing that where these parallel interests are present, the same persons suffer the loss and should receive their proportionate benefit of the carryover.[4]

It is clear that, in the instant case, the proportionate interest of the two *families* remained the same. The focus of section 382(b)(3), however, is on *persons,* and the transferor corporations and the acquiring corporation herein were not "*owned substantially* by the same *persons*" in the same proportions. (Emphasis added.) The disproportionate nature of the individual interests can be illustrated by the following comparison of the stock holding of each *person* in each of the corporations:

---

[4] As we noted in *Commonwealth Container Corp. v. Commissioner,* 48 T.C. 483, 493-494 (1967), affd. 393 F.2d 269 (3d Cir. 1968):

"We surmise that [sec. 382(b)(3)] was inserted to avoid application of the mechanical test provided in paragraph (2) where both corporations involved in a reorganization were for all practical purposes owned by the same persons in the same proportions before the reorganization so that it would make little difference how much stock of the acquiring corporation was issued to the transferor corporation or its stockholders under the plan of reorganization, because the same persons who suffered the losses would be getting the benefit of the carryover in the same proportions as the losses were incurred. * * *"

*Shares*

| Person | Pre-reorganization | | | Post-reorganization |
| | Kern's Bakery of Virginia | Kern's Bakery | Brown-Greer | Kern's Bakery of Virginia |
|---|---|---|---|---|
| William C. Greer | 2,500 | 162 | 250 | 22,858 |
| John L. Greer, Jr. | 2,500 | 162 | 249 | 22,831 |
| John L. Greer, Sr. | | 1 | | 84 |
| John L. Greer, Sr., as trustee for grandchildren | | 30 | | 2,520 |
| John L. Greer, Sr., as custodian for grandchildren | | 19 | | 1,596 |
| Hamilton National Bank, as trustee for Greers | | 1 | 1 | 111 |
| Roy H. Brown, Jr. | 1,900 | | | 1,900 |
| T.G. Brown III | 1,900 | | | 1,900 |
| J. Harry Brown | 1,200 | 90 | 75 | 10,785 |
| Hamilton National Bank, et al., trustees under will of Roy H. Brown, Sr. (Roy H. Brown Trust) | | 284 | 424 | 35,304 |
| Hamilton National Bank, as trustee for Browns | | 1 | 1 | 111 |
| | 10,000 | 750 | 1,000 | 100,000 |

Reduced to percentages, the comparison is as follows:

*Stockholding percentages*

| Person | Pre-reorganization | Transferors | | Post-reorganization |
| | Kern's Bakery of Virginia (acquiring) | Kern's Bakery | Brown-Greer | Kern's Bakery of Virginia |
|---|---|---|---|---|
| William C. Greer | 25 | 21.60 | 25.00 | 22.86 |
| John L. Greer, Jr. | 25 | 21.60 | 24.90 | 22.83 |
| John L. Greer, Sr. | | 13 | | .08 |
| John L. Greer, Sr., as trustee for grandchildren | | 4.00 | | 2.52 |
| John L. Greer, Sr., as custodian for grandchildren | | 2.53 | | 1.60 |
| Hamilton National Bank, as trustee for Greers | | .13 | .10 | .11 |
| Roy H. Brown, Jr. | 19 | | | 1.90 |
| T.G. Brown III | 19 | | | 1.90 |
| J. Harry Brown | 12 | 12.00 | 7.50 | 10.79 |
| Hamilton National Bank, et al., trustees under will of Roy H. Brown, Sr. (Roy H. Brown Trust) | | 37.87 | 42.40 | 35.30 |
| Hamilton National Bank, as trustee for Browns | | .13 | .10 | .11 |
| | 100 | 99.99 | 100.00 | 100.00 |

These figures make it clear that there was great diversity of ownership in the three corporations prior to the reorganization. Of the nine persons who owned Kern's Bakery, Inc. (one of the transferor corporations), six shareholders with 44.79 percent of the stock had no interest at all in petitioner, the acquiring corporation. Similarly, of the six persons who owned stock in Brown, Greer Co., the other transferor, three shareholders with 42.60 percent of the stock, had no interest in petitioner. Finally, of the six persons owning stock in petitioner, two, with 38 percent of the stock, did not own stock in either of the two transferor corporations.

This pattern of ownership is far wide of the statutory requirement that the transferor corporation and the acquiring corporation be "owned substantially by the same persons in the same proportion." In fact, the examples in the regulations indicate that a 20-percent difference in the ownership of the transferor and acquiring corporations will fall outside the provisions of section 382(b)(3).[5]

---

[5] The examples given in sec. 1.382(b)–1(d)(2), Income Tax Regs., allow only a small differential in shareholder ownership under sec. 382(b)(3).

Sec. 1.382(b)–1(d) *Exception to application of section 382(b).* * * *

(2) The transferor corporation and the acquiring corporation will be considered as owned substantially by the same persons in the same proportion only if the same persons own substantially all the stock of the corporations in substantially the same proportion. This rule may be illustrated by the following examples:

*Example (1).* A and B each owns 50 percent of the fair market value of the outstanding stock of X Corporation. A owns 52 percent and B owns 48 percent of the fair market value of the outstanding stock of Y Corporation. Y Corporation acquires the assets of X Corporation in a reorganization to which section 381(a) applies. The exception provided in section 382(b)(3) is applicable.

*Example (2).* A and B each owns 50 percent of the fair market value of the outstanding stock of X Corporation. A owns 60 percent and B owns 40 percent of the fair market value of the outstanding stock of Y Corporation. Y Corporation acquires the assets of X Corporation in a reorganization to which section 381(a) applies. The exception provided in section 382(b)(3) is not applicable.

*Example (3).* A and B each owns 48 percent of the fair market value of the outstanding stock of X Corporation and of Y Corporation. C owns the remaining 4 percent of X Corporation and D owns the remaining 4 percent of Y Corporation. Y Corporation acquires the assets of X Corporation in a reorganization to which section 381(a) applies. The exception provided in section 382(b)(3) is applicable.

*Example (4).* A and B each owns 40 percent of the fair market value of the outstanding stock of X Corporation and of Y Corporation. C owns the remaining 20 percent of X Corporation and D owns the remaining 20 percent of Y Corporation. Y Corporation acquires the assets of X Corporation in a reorganization to which section 381(a) applies. The exception provided in section 382(b)(3) is not applicable.

This Court was also required to interpret the phrase "owned substantially by the same persons in the same proportion" in *Commonwealth Container Corp. v. Commissioner,* 48 T.C. 483 (1967), affd. 393 F.2d 269 (3d Cir. 1968). In that case, a single family had control of two corporations, Commonwealth Container, a profitable corporation, and Tri City, a loss corporation. These two corporations were subsequently merged, with Commonwealth Container emerging as the survivor. The stock in each corporation was owned as follows:

| Shareholder[1] | Commonwealth (before merger) | Tri City | Commonwealth (after merger) |
|---|---|---|---|
| Paul Densen | 29.66% | 41.94% | 31.20% |
| Abbot Greene | 29.66% | 41.94% | 31.20% |
| Irwin Densen | 5.00% | 5.00% | 5.00% |
| Elmer Hertzmark | 25.00% | | 21.74% |
| Trusts for the Densen and Greene children | 10.68% | 11.02% | 10.72% |

[1] Paul Densen and Irwin Densen were brothers and Abbot Greene was their brother-in-law. Elmer Hertzmark was a Commonwealth Container employee.

In holding that the transferor corporation and the acquiring corporation were not owned substantially by the same persons in the same proportion, we emphasized the wide variations in interest held by Elmer Hertzmark. The variations in interest in the instant case are even more pronounced. For example, as noted above, 44.79 percent of the stock of one of the transferor corporations was held by shareholders with no interest at all in petitioner. The present case, therefore, falls well within our holding in *Commonwealth Container Corp.*

Within each of the family groups, the Browns and the Greers, each shareholder is related so that the stock of one would be attributable to each of the others under section 318. While petitioner recognizes that section 318 has no direct application to section 382(b)(3), it argues that "the attribution rules of section 318(a) represent an excellent example of what constitutes ownership by substantially 'the same persons.' " At the same time it would distinguish *Commonwealth Container Corp.* on the basis that Elmer Hertzmark's stock was not attributable to the remainder of the family there.

We must reject petitioner's contention. Section 318(a) is simply not applicable, either directly or indirectly. Section 318(a) begins as follows:

(a) GENERAL RULE.—For purposes of those provisions of this subchapter to which the rules contained in this section *are expressly made applicable*— [Emphasis added.]

Where Congress has spelled out the limitations on the use of a section with such specificity, courts should be loath to extend that use.[6] Moreover, section 318 is aimed primarily at the question of corporate control,[7] whereas the issue here involves the economic impact of the reorganization on the individual owners of stock.

Petitioner argues for the use of section 318 because it is helpful in determining who "substantially the same persons" are. But section 382(b)(3) makes the reduction inapplicable "if the transferor corporation and the acquiring corporation are *owned substantially* by the same persons in the same proportion." (Emphasis added.) It is plain that the word "substantially" modifies the word "owned" and not the term "persons."[8]

Finally, petitioner argues that even without attribution, the shareholders of the loss corporation owned over 60 percent of the acquiring corporation after the reorganization, and that their substantial continuing interest entitles them to a full loss carryover. We have previously rejected this argument in *Commonwealth Container Corp., supra* at 491:

Petitioner argues first that inasmuch as the stockholders of Tri-City had a controlling interest in petitioner both before and after the merger, there was the requisite continuity of interest in the operating loss carryover which Congress sought to require in order to make the entire operating loss

---

[6] Additionally, Congress specifically applied the attribution rules of sec. 318 in sec. 382(a) (see sec. 382(a)(3)). The specific focus on these rules makes it clear that Congress considered the attribution in connection with sec. 382 and that they were not intended to apply to sec. 382(b). (See also sec. 382(b)(5), dealing with the subject of "attribution of ownership in a different context.")

[7] See sec. 318(b), *Levin v. Commissioner*, 385 F.2d 521 (2d Cir. 1967); cf. S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 45 (1954).

[8] Sec. 1.382(b)-1(d)(2), Income Tax Regs., states the sec. 382(b)(3) exception is applicable "only if the same persons own substantially all the stock of the corporations in substantially the same proportion," and examples 3 and 4 provide examples illustrating the point. See also sec. 382(b)(6) as amended by the Tax Reform Act of 1976.

carryover available to the acquiring corporation. We agree that in enacting section 381(c)(1) Congress sought to liberalize the carryover of operating losses in certain corporate reorganizations but we must also recognize that in section 382(b) Congress established an objective test to determine whether all or only a part of the operating loss carryover would be available to the acquiring corporation in such a reorganization; and that the test is based upon the percentage of interest in the acquiring corporation the stockholders of the loss corporation *receive as a result of the reorganization.* To interpret the statute otherwise would require reading the phrase "as the result of owning stock of the loss corporation" completely out of the statute; and this we are not justified in doing. *Hanover Bank v. Commissioner,* 369 U.S. 672; *Frank W. Verito,* 43 T.C. 429. [See also n. 5 *supra.*]

Petitioner articulates what is arguably a more equitable rule, but a rule which is inconsistent with the plain meaning of the statute. See Asimow, "Detriment and Benefit of Net Operating Losses: A Unifying Theory," 24 Tax L. Rev. 1, 23 (1968). If the rule is to be changed it is the province of the Congress rather than the courts to change it.

*Decisions will be entered under Rule 155.*