Ulysses G. TRIVETT, Jr. and Violet W. Trivett, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 77–1753.

United States Court of Appeals, Sixth Circuit.

Dec. 26, 1979.

Catherine S. Bardsley, George D. Webster, Daniel Piliero, Washington, D. C., for petitioners-appellants.

M. Carr Ferguson, Gilbert E. Andrews, Asst. Attys. Gen., Tax Div., U. S. Dept. of Justice, Washington, D. C., Stuart E. Seigel, Chief Counsel, I. R. S., Leonard J. Henzke, Jr., Timothy B. McBride, Washington, D. C., for respondent-appellee.

Before CELEBREZZE, MERRITT and MARTIN, Circuit Judges.

### ORDER

This is an appeal from a decision of the United States Tax Court upholding a finding of deficiency in Ulysses G. Trivett, Jr.'s income taxes for 1969. Jurisdiction is conferred upon this court by Section 7482 of the Internal Revenue Code of 1954, 26 U.S.C. § 7482. The decision below is found at 36 T.C. Memo 675 (1977).

In 1969 Trivett sold his Dairy Queen franchise to the American Dairy Queen Corporation (ADQ) for $400,000. ADQ paid him $100,000 in cash on June 19, 1969. On June 20, 1969, ADQ signed three promissory notes payable to Trivett, each in the amount of $100,000. The first note was to be paid on June 20, 1970; the second on June 20, 1971; and the third on June 20, 1972. Also on June 20, 1969, ADQ purchased in its own name three negotiable $100,000 certificates of deposit. They carried an interest rate of 6.25 percent, with the interest being paid to Trivett. The certificates were placed in the Citizens Bank of Elizabethton, Tennessee, to serve as security for the three promissory notes. ADQ specially endorsed the certificates as payable to Trivett on June 20 of 1970, 1971, and 1972 respectively.

On his 1969 federal income tax return, Trivett reported the sale under the installment method of Section 453 of the federal tax code. However, the Commissioner of Internal Revenue found a deficiency for the year of sale in the amount of $85,195.13. The Commissioner ruled that the entire proceeds of the sale were taxable in 1969. The Tax Court agreed, finding that ADQ's

promissory notes were nullified upon endorsement of the certificates of deposit to Trivett. The court found that the certificates constituted payments in 1969. Combined with the $100,000 in cash, the payments exceeded 30 percent of the sales price, the limitation amount under Section 453(b)(2)(B). We affirm.

■ Section 453(b) and its attendant regulations provide in part that at the taxpayer's election, income from the sale of personal property (other than a kind which is subject to treatment as inventory) is reportable under the installment method of accounting. The tax may thereby be spread over the period in which payments of the sales price are made. The seller thus realizes the profit out of each installment before the full tax is paid. Otherwise, the gain would be taken in one year, possibly before receipt of a substantial portion of the sales proceeds. *Burnet v. S & L Building Corp.*, 288 U.S. 406, 53 S.Ct. 428, 77 L.Ed. 861 (1933); *Pozzi v. Commissioner*, 49 T.C. 119 (1967).

■ To qualify under the installment method, the payments (exclusive of evidence of indebtedness of the purchaser) in the year of sale may not exceed 30 percent of the selling price. Trivett contends that in 1969 he did not receive, either actually or constructively, the $300,000 evidenced by the certificates of deposit. He frames the issue in terms of his ability to draw upon the certificates in the year of sale. He argues that he could not do so and urges the court to uphold his right to minimize tax liability. The Commissioner's argument is simple: transfer of the certificates of deposit extinguished ADQ's continuing obligation to pay, whereas transfer of ADQ's own note would not have extinguished its obligation. ADQ's purchase and endorsement of the certificates constituted full and final payment with no continuing debt relationship with Trivett. Since the year-of-sale payments exceeded the statutory limit, the sale was not reportable under the installment method.

■ The test to be applied was succinctly stated in *Rushing v. Commissioner*, 441 F.2d 593 (5th Cir. 1971), where the taxpayers were granted installment treatment. In *Rushing* the taxpayers voted to liquidate their corporation, created trusts for the benefit of their children, and sold their stock to the trustee in consideration of cash and installment notes. The court of appeals rejected the Commissioner's attack on reporting the gain on the installment basis, stating at 598:

> [A] taxpayer certainly may not receive the benefits of the installment sales provisions if, through his machinations, he achieves in reality the same result as if he had immediately collected the full sales price, or, in our case, the full liquidation proceeds. *As we understand the test, in order to receive the installment sale benefits the seller may not directly or indirectly have control over the proceeds or possess the economic benefit therefrom.* (Emphasis added).

Trivett has not met this test. He received substantial ownership rights in the certificates of deposit, evidenced by his receipt of $6,250 in interest on each certificate. There was no independent control over the certificates by the Citizens Bank. The bank must, therefore, be characterized as an intermediate conduit. Installment sales treatment is denied where such intermediate entities are found. *See, e. g., Commissioner v. Court Holding Co.*, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945), and *Malkan v. Commissioner*, 54 T.C. 1305 (1970). The critical element in those cases "was the original transferor's pre-arrangement and effective pre-commitment to a third party for the ultimate retransfer by the intermediate party." *Pityo v. Commissioner*, 70 T.C. 125, 138 (1978), *appeal dismissed*, No. 78–3320 (5th Cir. March 26, 1979). Such are the facts in our case. *See also Oden v. Commissioner*, 56 T.C. 569 (1971).

Accordingly, the decision of the Tax Court is affirmed.