RUFUS K. COX, JR., AND ETHEL M. COX, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10115–78.    Filed June 15, 1982.

*Charles H. Burton* and *Robert J. Tyrrell,* for the petitioners.
*Richard F. Stein,* for the respondent.

## OPINION

IRWIN, *Judge:* By letter dated June 5, 1978, respondent has determined a deficiency of $12,428 in petitioners' 1974 Federal income taxes. After concessions, the sole issue for decision is whether petitioners are entitled to elect to report their gain from a sale[1] of stock under section 453.[2]

This case was submitted without trial pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioners Rufus K. Cox, Jr., and Ethel M. Cox, husband

---

[1] The terms "sale" and "sold" are used herein solely for purposes of convenience and are not meant to characterize the transaction at issue for purposes of resolving this case.

[2] All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated.

and wife, resided in Roanoke, Va., when they filed their petition herein. Petitioners' 1974 joint Federal income tax return was filed with the Internal Revenue Service Center, Memphis, Tenn., and used the cash method of tax accounting.

On December 28, 1968, Rudy Cox, Inc., Realtors (hereinafter RCI) was incorporated. RCI is engaged in the real estate business. Petitioner Rufus K. Cox, Jr., has owned 100 percent of RCI's stock since the date of incorporation.

Until January 2, 1974, petitioners owned, as tenants by the entirety, 100 percent of the stock of New Roanoke Investment Corp. (hereinafter New Roanoke).

Petitioner Rufus K. Cox, Jr., had a drawing account with RCI. As of December 31 of 1972, 1973, 1974, and 1975, the balances of this account were as follows:

| Date | Amount |
|---|---|
| Dec. 31, 1972 | $123,041.04 |
| Dec. 31, 1973 | 56,260.43 |
| Dec. 31, 1974 | 36,623.53 |
| Dec. 31, 1975 | 18,403.37 |

On September 7, 1973, petitioner Rufus K. Cox, Jr., assumed $110,000 of an indebtedness of RCI, which reduced his drawing account balance with RCI by that amount. On December 28, 1973, petitioners executed ten $11,000 promissory notes to RCI, one note being payable in each of the succeeding 10 years. Interest on each note was 8 percent annually. These notes were given in exchange for 4.86 acres of land previously transferred to petitioners by RCI.

On January 2, 1974, petitioners transferred their stock in New Roanoke to RCI in exchange for five promissory notes, in the amount of $20,000 each, from RCI. These notes were payable over a 5-year period. One note was due each year on January 2, the first note being due on January 2, 1975, and the last note on January 2, 1979. Each note provided an annual interest rate of 5 percent. On April 30, 1975, New Roanoke merged into RCI.

On January 2, 1974, petitioners' basis in their New Roanoke stock was $1,000. At that time, petitioner Rufus K. Cox, Jr.'s basis in his RCI stock was $1,000. As of January 2, 1974, RCI had no earnings and profits.

On their 1974 return, petitioners elected to report the gain[3] from the sale of the New Roanoke stock on the installment method. Petitioners reported no payments received in 1974 and thus no gross income in that year from the sale of the New Roanoke stock. Petitioners have reported gains from this sale on their 1975, 1976, and 1977 Federal income tax returns.

In the notice of deficiency issued to petitioners, respondent stated:

> It has been determined that on January 2, 1974, you realized a long-term capital gain of $99,000 from the receipt of five promissory notes of $20,000 each, issued by Rudy Cox, Inc. Realtors, and that such long-term capital gain is includible in your income for the taxable year ended December 31, 1974.

Respondent maintains that petitioners are not entitled to report this gain under section 453 because the transfer of the New Roanoke stock to RCI, by reason of the application of sections 304 and 302, was not a "casual sale" as required by section 453(b)(1)(B), prior to its amendment by the Installment Sales Revision Act of 1980, Pub. L. 96–471, 94 Stat. 2247, which provided that income from a casual sale of personal property for a price exceeding $1,000 may be returned on the installment method. Petitioners argue that they are entitled to report the gain on the installment basis for two reasons: (1) The transaction was in form a sale and because sections 302 and 304 apply only to determine the amount and character of the resultant income, they do not change that form, and (2) because section 301(c)(3)(A) treats their gain as "gain from the sale or exchange of property," section 453(b)(1)(B) is satisfied.[4]

In order to provide a clearer understanding of the parties' arguments, it is necessary to travel through the statutory framework provided in sections 301, 302, 304, 316, and 318. Section 304(a)(1) provides:

---

[3]Petitioners originally reported, and respondent assessed the deficiency upon, a gain of $99,000 from this sale. However, petitioners assert, and respondent concedes on brief, that the correct amount of gain to be reported is $98,000. The parties have obtained this result by way of sec. 304(a) which provides that under the instant facts, the New Roanoke stock sold to RCI is treated as a contribution to the capital of RCI. Sec. 1.304–2(a), Income Tax Regs., states that, "The transferor's basis for his stock in the acquiring corporation [RCI] shall be increased by the basis of the stock surrendered by him [New Roanoke]." The effect of this basis adjustment upon the petitioners' gain realized is further explained *infra*.

[4]The parties have agreed that all the other requirements of s .c. 453(b) have been met by petitioners.

SEC. 304. REDEMPTION THROUGH USE OF RELATED CORPORATIONS.

(a) TREATMENT OF CERTAIN STOCK PURCHASES.—

(1) ACQUISITION BY RELATED CORPORATION (OTHER THAN SUBSIDIARY).— For purposes of sections 302 and 303, if—

(A) one or more persons are in control of each of two corporations, and

(B) in return for property, one of the corporations acquires stock in the other corporation from the person (or persons) so in control,

then * * * such property shall be treated as a distribution in redemption of the stock of the corporation acquiring such stock. In any such case, the stock so acquired shall be treated as having been transferred by the person from whom acquired, and as having been received by the corporation acquiring it, as a contribution to the capital of such corporation.

Section 304(c)(1) defines "control" as the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote, or at least 50 percent of the total value of shares of all classes of stock. The constructive ownership rules of section 318 apply in determining control. Sec. 304(c)(2).

Prior to the sale, petitioners were in control of both New Roanoke and RCI. Indeed, each petitioner, under the rules of sections 304 and 318, is deemed to have owned 100 percent of each corporation.[5] Section 304(a)(1) thus applies to the sale, and the RCI notes are treated as a distribution in redemption of RCI stock. Therefore, section 302(b) must be addressed to determine whether this distribution is to be treated as a distribution under section 301, pursuant to section 302(d), or payment in exchange for the stock, pursuant to section 302(a). Section 304(b)(1) states that in testing the transaction under section 302(b), the determination must be made with reference to the stock of the "issuing corporation," i.e., the New Roanoke stock.

After the sale to RCI, both petitioners still owned 100 percent of New Roanoke; petitioner Rufus K. Cox, Jr., by reason of his 100-percent ownership of RCI (sec. 318(a)(2)(C)),

---

[5]Petitioner Rufus K. Cox, Jr., owned 100 percent of RCI directly and 100 percent of New Roanoke directly. Petitioner Ethel M. Cox owned 100 percent of New Roanoke directly. Because sec. 318(a)(1)(A)(i) attributes to a spouse stock owned by the other spouse, petitioner Ethel M. Cox is deemed to have owned 100 percent of the stock of RCI.

and petitioner Ethel M. Cox, by reason of the stock ownership of her husband (sec. 318(a)(1)(A)(i)).[6] Therefore, the redemption failed to satisfy any of the tests of section 302(b) and is a distribution to be treated under section 301. See *United States v. Davis*, 397 U.S. 301 (1970).

Section 301(a) states that a distribution of property made by a corporation to its shareholder with respect to its stock shall be treated as provided in section 301(c). Section 301(c) provides the rules for the amount taxable to the shareholder: [7]

SEC. 301(c). AMOUNT TAXABLE.—In the case of a distribution to which subsection (a) applies—

(1) AMOUNT CONSTITUTING DIVIDEND.—That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income.

(2) AMOUNT APPLIED AGAINST BASIS.—That portion of the distribution which is not a dividend shall be applied against and reduce the adjusted basis of the stock.

(3) AMOUNT IN EXCESS OF BASIS.—

(A) IN GENERAL.—Except as provided in subparagraph (B), that portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock, shall be treated as gain from the sale or exchange of property.

Section 316 defines a dividend as follows:

SEC. 316(a). GENERAL RULE.—For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders—

(1) out of its earnings and profits accumulated after February 28, 1913, or

(2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without dimunition by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

Section 304(b)(2)(A) guides us to the earnings and profits of

---

[6]Although petitioner Ethel M. Cox actually owned none of RCI's stock, the attribution rules are still applicable. *Coyle v. United States*, 415 F.2d 488, 490 (4th Cir. 1968); *Niedermeyer v. Commissioner*, 62 T.C. 280, 285 (1974), affd. 535 F.2d 500 (9th Cir. 1976).

[7]The parties agree that the amount distributed to petitioners, which is the fair market value of the RCI notes (sec. 301(b)(1)(A)), is $100,000. They also agree that the notes are "property" as defined in sec. 317(a).

RCI, the acquiring corporation. Because RCI had no earnings and profits, no amount of the distribution is a dividend.[8] Section 301(c)(2) requires the petitioners' basis in their RCI stock, as increased by the "capital contribution" created in section 304(a)(1), to be decreased by the distribution. Thus, the $2,000 basis of the RCI stock (see note 3 *supra*) is reduced to zero. Section 301(c)(3) accordingly applies to treat the remainder of the distribution ($98,000) as gain from the sale or exchange of property. The parties agree that this gain is long-term capital gain.

Neither party has provided the Court with any authoritative enlightenment on the issue of whether this transaction was a sale for purposes of section 453, nor have we found any. At first blush, petitioners' argument that sections 302 and 304 serve only to provide the taxable amount and the character of the income from the disposition of their New Roanoke stock and have nothing to do with the tax accounting of such income is appealing. However, upon closer scrutiny, we find that the effects of sections 302 and 304 go beyond those stated by the petitioners.

Section 453 serves as a relief provision which allows a taxpayer to report the gain from a sale over the period during which he is receiving payments thereon. *Burnet v. S & L Building*, 288 U.S. 406, 413–414 (1933); *Trivett v. Commissioner*, 611 F.2d 655 (6th Cir. 1979), affg. T.C. Memo. 1977–161; *Pozzi v. Commissioner*, 49 T.C. 119, 126 (1967). As a relief provision, section 453 must be strictly construed. *Cappel House Furnishing Co. v. United States*, 244 F.2d 525, 529 (6th Cir. 1957); *Wrenn v. Commissioner*, 67 T.C. 576, 580 (1976); *Blum's, Inc. v. Commissioner*, 17 B.T.A. 386, 389 (1929). When what is in form an installment sale is in substance not an installment sale, section 453 is inapplicable. *Griffiths v. Commissioner*, 308 U.S. 355 (1939) ("installment sale" of stock found to be rescission of contract from which "seller" had previously been allowed a loss).

Section 304(a)(1) was first enacted as a part of the Internal Revenue Code of 1954. The purpose of section 304(a)(1) was to prevent the "bail out" of the accumulated earnings of a

---

[8] Apparently the parties also agree that RCI had no earnings and profits *after* Jan. 2, 1974, although they only stipulated to RCI's earnings and profits as of Jan. 2, 1974.

corporation by its shareholders at capital gains rates by the use of a stock sale to a related corporation. *Vinnell v. Commissioner,* 52 T.C. 934, 941 (1969). For example, if X, an individual, owned 100 percent of the stock of both A Co. and B Co., a sale of X's B Co. stock to A Co. would, absent section 304(a)(1), result in a payment of A Co.'s earnings to X at capital gain rates (assuming that the B Co. stock was a capital asset in the hands of X). Section 304(a)(1) is a congressionally created example of the "substance over form" doctrine which recasts the "sale" as a contribution by X of his B Co. stock to the capital of A Co. followed by a redemption by A Co. from X. The tax consequences of the "sale" must then be tested under the rules of section 302. In other words, "The effect of the operation of section 304 is to characterize as redemptions distributions which are cast in the form of sales." S. Rept. 1622, 83d Cong., 2d Sess. 239 (1954). See also H. Rept. 1337, 83d Cong., 2d Sess. A79 (1954). In *Fehrs Finance Co. v. Commissioner,* 58 T.C. 174 (1972), affd. 487 F.2d 184 (8th Cir. 1973), we described the transactional recharacterization reached through section 304(a)(1) as an "express mandate." 58 T.C. at 182. In light of this, we cannot find the transaction herein to be anything but a contribution to RCI's capital by petitioner, followed by a redemption to which section 302 applies.[9]

While there may appear to be an incongruity to the application of section 304(a)(1) where, as here, the proceeds of the sale are taxable as long-term capital gain, we find none. Only through the rather labyrinthine exercise required by section 304(a)(1) do the parties arrive at the amount and the nature of petitioners' income. This inquiry was mandated by section 304(a)(1), and, thus, it seems rather circular to argue that section 304 does not effectively recast the transaction because the result reached through the application of section 304 is long-term capital gain.

We also take note that petitioners' argument for an increase of their RCI basis through a capital contribution of the New Roanoke stock to RCI, relies upon the "substance over form" provisions of section 304(a)(1) (see note 3 *supra*).

---

[9]We do not believe that the prefatory words to sec. 304(a)(1), "For purposes of sections 302 and 303," were intended to restrict application of sec. 304(a)(1) to those sections, but rather were used to direct one to those sections. Sec. 1.304–1(a), Income Tax Regs., clarifies this.

The parties have correctly agreed that the redemption herein shall be treated as a distribution under section 302(d) and section 301(a). Petitioners maintain, however, that because the proceeds are "treated as gain from the sale or exchange of property" under section 301(c)(3)(A), then a "casual sale" has occurred which entitles them to elect the provisions of section 453. We disagree.

Petitioners have overlooked section 1.301–1(b), Income Tax Regs., which states, "A *distribution* made by its corporation to its shareholders shall be included in the gross income of the distributees when the cash or other property is unqualifiedly made subject to their demands" (emphasis added), which would be 1974, when petitioners received RCI's notes. The effect of this regulation is to place all shareholders under one tax-accounting method for reporting corporate distributions. *Avery v. Commissioner*, 292 U.S. 210, 214 (1934) (1921 predecessor of sec. 1.301–1(b), Income Tax Regs.); *Tar Products Corp. v. Commissioner*, 130 F.2d 866, 867 (3d Cir. 1942), revg. 45 B.T.A. 1033 (1941) (1935 predecessor of sec. 1.301–1(b), Income Tax Regs.); *Commissioner v. American Light & Traction Co.*, 156 F.2d 398, 400 (7th Cir. 1946), affg. 3 T.C. 1048 (1944); *Frelbro Corp. v. Commissioner*, 36 T.C. 864, 871–872 (1961), revd. on other issues 315 F.2d 784 (2d Cir. 1963). The single method of tax accounting for corporate distributions prohibits use of the installment method by the petitioners. We note that the regulation uses the word "distribution" rather than "dividend" and thus makes no distinction between section 301(c)(1) income and section 301(c)(3)(A) income.

Nor can we find that the language of section 301(c)(3)(A) aids petitioners. Section 453(b) requires a sale. Section 301(c)(3)(A) is intended to tax distributions which impair a corporation's capital as capital gains (*Cloutier v. Commissioner*, 24 T.C. 1006, 1013 (1955)). We can see no reason why a taxpayer should be allowed to account for section 301(c)(3)(A) gain differently from income under section 301(c)(1), especially since the applicability of section 301(c)(3)(A) depends, to a large extent, upon the combination of a fortuitous lack of corporate earnings and profits and a small stock basis. We find no intent in section 301(c)(3)(A) to afford shareholders access to a more desirable method of accounting. Section 301(c)(3)(A) merely character-

izes the gain as gain from a sale or exchange, it does not provide the "sale" needed for section 453(b).

Accordingly, we hold that section 453 is unavailable to the petitioners who, because of the application of section 304(a)(1), are deemed to have received a distribution under section 301. To reflect concessions and the foregoing,

*Decision will be entered under Rule 155.*