Stanley H. BRAMS,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 83–1387.

United States Court of Appeals,
Sixth Circuit.

Submitted on Briefs April 4, 1984.

Decided May 17, 1984.

Irving F. Keene, Southfield, Mich., for petitioner-appellant.

Kenneth W. Gideon, Chief Counsel, I.R.S., Glenn L. Archer, Jr. (Lead Counsel), Asst. Atty. Gen., Michael L. Paup, Richard Farber, David English Carmack, Tax Div.,

Dept. of Justice, Washington, D.C., for respondent-appellee.

Before LIVELY, Chief Judge, JONES, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

PER CURIAM.

The petitioner-taxpayer appeals from a decision of the Tax Court denying a capital gain allowance with respect to certain income. The issues presented on this appeal are, (1) whether the Tax Court correctly held that income received by the taxpayer in exchange for certain stock came within the purview of I.R.C. § 304(a)(1) and was therefore taxable by virtue of §§ 301, 302, and 316 as a dividend,[1] and (2) whether the Tax Court was correct in holding that the income received by the taxpayer could not be reported on an installment basis. We conclude that the Tax Court properly resolved both issues.

The facts of this case are undisputed. Prior to December 1, 1973, the taxpayer, Stanley H. Brams, owned all of the stock of Labor Trends, Inc. (Labor) and Trends Publishing Company (Trends), and 31.6 percent of the outstanding stock of Brams Communication Services Company (Communication). The taxpayer's two sons owned 52.6 percent of the stock of Communication. The Stanley H. Brams Trust, the income beneficiaries of which were taxpayer's two sons, owned 14.7 percent of the stock of Communication.

All three corporations occupied the same office space, shared many of the same employees and used the same telephones and office equipment. The three corporations each had identical profit sharing plans, which recognized employment time for each corporation as time credited to vesting under all plans.

On December 1, 1973, taxpayer exchanged all of the stock of Trends for 700 shares of stock of Communication. Following this exchange, taxpayer owned directly 34 percent of the stock of Communication

as opposed to the 31.6 percent which he had previously owned. Furthermore, after the transaction the taxpayer's sons and the Stanley H. Brams Trust owned 50.8 and 14.2 percent of the stock of Communication respectively.

On December 1, 1973, the same date as the above transaction, taxpayer transferred all of the stock of Labor for cash and cash equivalents, including an interest bearing promissory note payable in installments. Both transactions were part of a plan to combine the operations of the three corporations into Communication. Communication acquired all of taxpayers stock in Labor and was to pay taxpayer $121,977.11, in five installments, in return. In 1973, Communication paid the first installment of 20 percent and gave taxpayer an interest bearing promissory note for the remaining amount. The issues in this case relate to the transfer of the Labor stock to Communication.

At the time Communication acquired the Labor stock, it had earnings and profits in excess of $121,977.11, the price paid for the stock. In each of the years 1974 through 1976, Communication had earnings and profits in excess of the amount paid on the installment obligation.

Taxpayer reported long-term capital gain on the transfer of his Labor stock to Communication. The transaction was reported as an installment sale on the taxpayer's federal income tax returns for 1973, 1974, 1975, and 1976. The Commissioner determined that the transfer of taxpayer's Labor stock to Communication was a distribution in redemption of stock and was taxable as ordinary income. In an amended answer, the Commissioner further determined that the dividend income could not be reported in installments and was entirely includable as income in 1973. The Commissioner, therefore, assessed tax deficiencies against the taxpayer for the years 1973 through 1976. The Tax Court agreed with the Commissioner and entered its decision accordingly on March 31, 1983. The tax-

---

**1.** All statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue, unless otherwise provided.

payer thereafter filed a notice of appeal with this Court.

## I.

The first issue presented by the taxpayer requires that we determine whether the transfer of the Labor stock to Communication is governed by § 304 [2] of the Code, and is therefore taxed as a dividend, as the Commissioner contends, or whether the transaction comes within § 351 [3] of the Code, and is therefore taxed as a capital gain, as the taxpayer contends. The taxpayer's precise argument is that this transaction comes within the literal terms of both §§ 351 and 304(a)(1) but that § 351 controls. *See Commissioner v. Stickney*, 399 F.2d 828 (6th Cir.1968).

Section 351, however, does not apply to this case. In order to apply § 351, the taxpayer would have to show that he owned at least 80 percent of the voting stock of Communication following the

2. SEC. 304. REDEMPTION THROUGH USE OF RELATED CORPORATIONS.

(a) *Treatment of Certain Stock Purchases.—*
(1) *Acquisition by related corporation (other than subsidiary).—*For purposes of sections 302 and 303, if—

(A) one or more persons are in control of each of two corporations, and

(B) in return for property, one of the corporations acquires stock in the other corporation from the person (or persons) so in control,

then (unless paragraph (2) applies) such property shall be treated as a distribution in redemption of the stock of the corporation acquiring such stock. In any such case, the stock so acquired shall be treated as having been transferred by the person from whom acquired, and as having been received by the corporation acquiring it, as a contribution to the capital of such corporation.

\* \* \* \* \* \*

(b) *Special Rules for Application of Subsection (a).—*

(1) *Rule for determinations under section 302(b).—*In the case of any acquisition of stock to which subsection (a) of this section applies, determinations as to whether the acquisition is, by reason of section 302(b), to be treated as a distribution in part or full payment in exchange for the stock shall be made by reference to the stock of the issuing corporation. In applying section 318(a) (relating to constructive ownership of stock) with respect to section 302(b) for purposes of this paragraph, sections 318(a)(2)(C) and 318(a)(3)(C) shall be applied without regard to the 50 percent limitation contained therein.

(2) *Amount constituting dividend.—*
*Where subsection (a)(1) applies.—*In the case of any acquisition of stock to which paragraph (1) (and not paragraph (2)) of subsection (a) of this section applies, the determination of the amount which is a dividend shall be made solely by reference to the earnings and profits of the acquiring corporation.

\* \* \* \* \* \*

(c) *Control.—*
(1) *In general.—*For purposes of this section, control means the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote, or at least 50 percent of the total value of shares of all classes of stock. If a person (or persons) is in control (within the meaning of the preceding sentence) of a corporation which in turn owns at least 50 percent of the total combined voting power of all stock entitled to vote of another corporation, or owns at least 50 percent of the total value of the shares of all classes of stock of another corporation, then such person (or persons) shall be treated as in control of such other corporation.

(2) *Constructive ownership.—*Section 318(a) (relating to the constructive ownership of stock) shall apply for purposes of determining control under paragraph (1). For purposes of the preceeding sentence, sections 318(a)(2)(C) and 318(a)(3)(C) shall be applied without regard to the 50 percent limitation contained therein.

3. SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.

(a) *General Rule.—*No gain or loss shall be recognized if property is transferred to a corporation ... by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property.

(b) *Receipt of Property.—*If subsection (a) would apply to an exchange but for the fact that there is received, in addition to the stock or securities permitted to be received under subsection (a), other property or money, then—

(1) gain (if any) to such recipient shall be recognized, but not in excess of—

(A) the amount of money received, plus
(B) the fair market value of such other property received; and
(2) no loss to such recipient shall be recognized.

\* \* \* \* \* \*

transaction. *See* § 368(c).[4] The taxpayer, however, owned only 34 percent of the Communication stock directly. He could not be attributed with owning additional stock indirectly because the attribution rules of § 318 [5] do not apply to § 351. By its terms, section 318(a) applies only to "those provisions of this subchapter to which the rules contained in this section *are expressly made applicable.*" (Emphasis added). *See also Kern's Bakery of Va. v. Commissioner,* 68 T.C. 517, 527 (1977); *Berghash v. Commissioner,* 43 T.C. 743 (1965) *aff'd,* 361 F.2d 257 (2d Cir.1966). Neither section 351 nor 368(c) expressly makes applicable the attribution rules of section 318. Since the taxpayer only owned 34 percent of the stock of Communi-

cation he cannot invoke the benefits of § 351. We must therefore determine whether section 304(a)(1) of the Code applies, as the Commissioner contends.

▮ Section 304(a)(1) of the Code was designed to prevent the bailout of corporate earnings at capital gain rates where a shareholder transferred stock of one corporation to another corporation under common control. Section 304(a)(1) treats such a sale as a redemption under § 302 rather than as a sale to an independent party.

In order for § 304(a)(1) to apply to this case, the taxpayer must have been in control of both Labor and Communication prior to the transaction. For purposes of § 304(a), control is defined as "50 percent

---

4. SEC. 368(c) provides:

(c) *Control.*—For purposes of part I (other than section 304), part II, and this part, the term "control" means the ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and at least 80 percent of the total number of shares of all other classes of stock of the corporation.

5. SEC. 318. CONSTRUCTIVE OWNERSHIP OF STOCK.

(a) *General Rule.*—For purposes of those provisions of this subchapter to which the rules contained in this section are expressly made applicable—

＊ ＊ ＊ ＊ ＊ ＊

(1) *Members of family.*—

(A) *In general.*—An individual shall be considered as owning the stock owned, directly or indirectly, by or for—

＊ ＊ ＊ ＊ ＊ ＊

(ii) his children, grandchildren, and parents.

＊ ＊ ＊ ＊ ＊ ＊

(2) *Attribution from partnerships, estates, trusts, and corporations.*—

＊ ＊ ＊ ＊ ＊ ＊

(B) *From trusts.*—

(i) Stock owned, directly or indirectly, by or for a trust (other than an employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be considered as owned by its beneficiaries in proportion to the actuarial interest of such beneficiaries in such trust.

(ii) Stock owned, directly or indirectly, by or for any portion of a trust of which a person is considered the owner under subpart E of part I of subchapter J (relating to grantors and others treated as substantial owners) shall be considered as owned by such person.

(C) *From corporations.*—If 50 percent or more in value of the stock in a corporation is owned, directly or indirectly, by or for any person, such person shall be considered as owning the stock owned, directly or indirectly, by or for such corporation, in that proportion which the value of the stock which such person so owns bears to the value of all the stock in such corporation.

＊ ＊ ＊ ＊ ＊ ＊

(5) *Operating rules.*—

(A) *In general.*—Except as provided in subparagraphs (B) and (C), stock constructively owned by a person by reason of the application of paragraph (1), (2), (3), or (4), shall, for purposes of applying paragraphs (1), (2), (3) and (4), be considered as actually owned by such person.

(B) *Members of family.*—Stock constructively owned by an individual by reason of the application of paragraph (1) shall not be considered as owned by him for purposes of again applying paragraph (1) in order to make another the constructive owner of such stock.

(C) *Partnerships, estates, trusts, and corporations.*—Stock constructively owned by a partnership, estate, trust, or corporation by reason of the application of paragraph (3) shall not be considered as owned by it for purposes of applying paragraph (2) in order to make another the constructive owner of such stock.

(D) *Option rule in lieu of family rule.*—For purposes of this paragraph, if stock may be considered as owned by an individual under paragraph (1) or (4), it shall be considered as owned by him under paragraph (4).

＊ ＊ ＊ ＊ ＊ ＊

of the total combined voting power of all classes of stock." § 304(c)(1). Furthermore § 304(a)(1), unlike § 351, takes into consideration the attribution rules of § 318. § 304(c)(2). Accordingly, in addition to the 31.6 percent of the voting stock of Communication which the taxpayer owned directly, he can be attributed with owning certain shares indirectly.

It is undisputed that the taxpayer was in control of Labor prior to the transaction because he owned 100 percent of its stock. Using the attribution rules of § 318, the taxpayer was also in control of Communication. Under § 318 the shares of stock owned by his sons and the shares owned by the trust are attributable to the taxpayer. § 318(a)(1)(B) states that "[a]n individual shall be considered as owning the stock owned, directly or indirectly by ... his children ..." Accordingly, the taxpayer was the constructive owner of the 52.6 percent of Communication's shares owned by his sons.

Section 318 further provides that the stock owned by a trust shall be considered as owned by its beneficiaries, in this case, the taxpayer's sons. § 318(a)(2)(B). Based upon these principles, the taxpayer's sons owned not only the 52.6 percent of the stock of Communication which they owned directly, but also the 14.7 percent owned by the Trust. In total the sons owned 67.3 percent of the stock of Communication prior to the transaction. The taxpayer is attributed with owning the entire 67.3 percent since these shares were owned by his children. Furthermore, he owned 31.6 percent of the stock of Communication directly. The taxpayer, therefore, owned approximately 99 percent of the stock of Communication before the transaction and 100 percent of the stock of Labor. Accordingly, he was in control of both corporations.

After the transaction, the taxpayer owned 34 percent of Communication directly and is attributed under § 318 with owning the 50.8 percent of the stock owned by his sons directly and the 14.2 percent owned by his sons indirectly by virtue of the Trust. Thus the taxpayer owned 99 percent of the stock of Communication after the transaction and was still in "control" under § 304. The net effect of the December 1, 1973 transaction was a distribution of Communication's assets to its shareholder, while the taxpayer retained control of the same corporate resources (now under the single control of Communication). This seems to be the precise situation at which § 304(a)(1) was aimed. In *Radnitz v. United States*, 294 F.2d 577 (2d Cir.1961), for example, the Court stated that "[t]he clear intent of this provision [§ 304(a)(1) ] is to make all sales of stock to related corporations subject to the rules of section 302." 294 F.2d at 578. (Footnote omitted).

The fact that a transaction is treated as a redemption under § 304(a)(1) is not determinative of whether the amount received by the taxpayer for his Labor stock is to be taxed as ordinary income or capital gain. The character of the income received by the taxpayer must be determined pursuant to § 302.

Section 302(a) provides that if a redemption of stock meets any of the tests provided in § 302(b) the redemption shall be treated as a distribution in exchange for stock and taxed as a capital gain. If, however, § 302(b) does not apply, the transaction will be treated as a distribution under § 301. *See* § 302(d). The taxpayer contends that §§ 302(b)(1) and (2) are applicable and that the income received should therefore be taxed at capital gain rates.

§ 302(b)(1) provides that a redemption will be treated as a distribution in exchange for stock if it is "not substantially equivalent to a dividend." In determining whether a redemption is "not essentially equivalent to a dividend" the Supreme Court has set forth the following test:

If a corporation distributes property as a simple dividend, the effect is to transfer the property from the company to its shareholders without a change in the relative economic interests or rights of the stockholders. Where a redemption has that same effect, it cannot be said to

have satisfied the "not essentially equivalent to a dividend" requirement of § 302(b)(1). Rather, to qualify for preferred treatment under that section, a redemption must result in a meaningful reduction of the shareholder's proportionate interest in the corporation. *United States v. Davis*, 397 U.S. 301, 313, 90 S.Ct. 1041, 1048, 25 L.Ed.2d 323 (1970). In determining whether there has been a meaningful reduction in the shareholder's proportionate interest under section 302(b), reference is made to the stock of the issuing corporation, in this case Labor. *See* Section 304(b). Furthermore, the attribution rules of § 318 apply. *See* § 302(c)(1); *United States v. Davis*, 397 U.S. at 307, 90 S.Ct. at 1045. In the case at bar, the taxpayer owned 100 percent of Labor before the transaction. He owned 99 percent after the transaction because he constructively owned the Labor shares which were transferred to Communication. *See* 318(a)(2)(C). Accordingly there was no "change in the relative economic interests or rights of the stockholders," 397 U.S. at 313, and 302(b)(1) does not apply. *See* *Brown v. United States*, 345 F.Supp. 241 (S.D.Ohio 1972), *aff'd*, 477 F.2d 599 (6th Cir.) *cert. denied*, 414 U.S. 1011, 94 S.Ct. 377, 38 L.Ed.2d 250 (1973).

The taxpayer also contends that § 302(b)(2) applies to this case. Section 302(b)(2) states that a redemption will be treated as a distribution in exchange for stock if "the distribution is substantially disproportionate with respect to the shareholder." Section 302(b)(2)(B) specifically provides that a redemption cannot be substantially disproportionate unless "immediately after the redemption the shareholder owns less than 50 percent of the total combined voting power of all classes of stock entitled to vote." As pointed out above, the application of the attribution rules of § 318 results in the taxpayer owning approximately 99 percent of the Labor voting stock after the transaction. Thus, the transaction was not "substantially disproportionate with respect to the shareholder."

Since the taxpayer fails to qualify under § 302(b), § 301 applies and the income received is taxable as ordinary income. Section 301(c)(1) provides that, "that portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income." Section 316 defines a dividend as any distribution of property made by a corporation to its shareholders from current or accumulated earnings and profits. Section 304(b)(2)(A) provides that the determination of the amount which is a dividend is made by reference to the earnings and profits of the acquiring corporation, which in this case is Communication. The parties have stipulated that at the time of the transaction the earnings and profits of Communication were in excess of $121,977.11, the total purchase price of the stock, and that in each of the years 1973 through 1976 Communication had earnings and profits in excess of the amount of each installment. Thus, the combined operation of §§ 301, 302, 304, 316 and 318 calls for dividend treatment of the $121,977.11. The Tax Court, therefore, correctly determined that the taxpayer was not entitled to capital gain treatment.

## II.

The remaining issue on this appeal is whether the taxpayer was entitled to report the money received for the stock under the installment basis of § 453 of the Code. Section 453(b) provides in pertinent part that "a casual sale or other casual disposition of personal property ... for a price exceeding $1,000, may (under regulations prescribed by the Secretary or his delegate) be returned" on an installment basis provided that in the taxable year of the sale or other disposition the seller received no payments or the payments did not exceed 30 percent of the selling price. Although the taxpayer did not receive more than 30 percent of the price of the stock in 1973, § 453 is inapplicable here. The tax court has held that the installment method treatment is not available where section 304 applies so as to treat the purported sale as a distribution to which section 301 applies. *Cox v. Commissioner*, 78 T.C. 1021

(1982). The rationale behind *Cox* is that such a distribution is not a "casual sale or other casual disposition of personal property" within the meaning of § 453. Because § 453 does not apply to this type of transaction, the taxpayer was not entitled to report the income under the installment method.

For the foreground reasons we AFFIRM the judgment of the Tax Court.