Walter J. & Mary Ann RUSSELL (86–1679), Cannonsburg Skiing Corporation (formerly Brown–Schaefer Corporation), Transferee of the assets of Cannonsburg Skiing Corporation, Transferor (86–1680), Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Nos. 86–1679, 86–1680.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 25, 1987.

Decided Oct. 27, 1987.

Walter J. Russell, Grand Rapids, Mich., pro se.

Jean Owens, Acting Counsel, I.R.S., Michael L. Paup, Lead Counsel, Roger M. Olsen, Tax Div., Dept. of Justice, Washington, D.C., Jonathan S. Cohen, Raymond W. Hepper, James B. Mann (argued), for C.I.R.

Before MARTIN and BOGGS, Circuit Judges, and WISEMAN,* District Judge.

* The Honorable Thomas A. Wiseman, Jr., Chief United States District Judge for the Middle District of Tennessee, sitting by designation.

BOYCE F. MARTIN, Jr., Circuit Judge.

Walter J. Russell and Cannonsburg Skiing Corporation appeal the Tax Court's (T.C. Memo 1985–15) denial of their claim against the Commissioner. Taxpayers claim that they were wrongfully denied tax benefits when the Commissioner determined that a series of transactions by them constituted a complete liquidation under Section 332 of the Internal Revenue Code of 1954 (26 U.S.C.), that Section 334(b)(2) applied for purposes of calculating the basis of the corporation's assets, and that there was no reorganization under Section 368(a)(1) of the Code nor any tax-free contributions to capital under Section 351 of the Code.

On appeal, they raise three issues: (1) whether the Tax Court correctly categorized their transactions as a liquidation to which Section 332 and 334(b)(2) applied, thus denying the corporation an opportunity to carry back post-acquisition net operating losses to offset pre-acquisition income; (2) whether the Tax Court correctly held that the taxpayers failed to meet the requirements for a 368(a)(1) reorganization, and (3) whether the Tax Court correctly held that they did not meet the requirements of Section 351 for tax-free contributions.

The material facts in this case are not in dispute and have been stipulated by the parties.

The Cannonsburg Skiing Corporation (Old Cannonsburg) was formed in 1965. Its sole business was the operation of a full-service ski facility, located outside Grand Rapids, Michigan. Russell and Mary Ann Russell, husband and wife, resided in Grand Rapids, Michigan, at the time they filed their petition. Russell was a shareholder of Old Cannonsburg from 1967 until October 24, 1978, on which date he surrendered his 1,857 shares of Old Cannonsburg stock for 3,233.2 shares of Brown–Schaefer stock. As of October, 1977, Old Cannonsburg had 215,000 shares of authorized, common voting stock with a par value of one dollar per share. The outstanding stock was owned as follows:

| Shareholder | Number of Shares | Percent Interest |
|---|---|---|
| C. William Goff | 103,800 | 87.85 |
| John D. Bunbury | 3,750 | 3.17 |
| John Schermerhorn | 3,750 | 3.17 |
| Old Kent Bank as Trustee for Rosemary E. Thomas | 5,000 | 4.24 |
| Walter J. Russell | 1,857 | 1.57 |
| Total | 118,157 | 100.00 |

On October 21, 1977, the owners of 98% of the Old Cannonsburg stock (the Goff Group), excluding Walter Russell, agreed to sell their shares to Paul W. Brown, Prentiss M. Brown, Jr., and Roy A. Schaefer (the Brown Group). This agreement contemplated that the Brown Group would form a corporation, 100% owned by them, to which all the rights and obligations of the stock purchase agreement would be assigned.

On February 6, 1978, the Brown Group formed Brown–Schaefer Corporation under the laws of the state of Michigan. The corporation's stock was owned one-third each by the three principals. Its only assets were funds provided by the Brown Group to be used as a down payment for the Old Cannonsburg stock. Pursuant to the October 21, 1977 Agreement, they assigned their rights and interests under the Agreement to their newly formed and wholly owned corporation.

On May 5, 1978, Brown–Schaefer purchased approximately 98% of Old Cannonsburg's outstanding shares and the Brown Group became the sole members of Old Cannonsburg's board of directors. From the date of closing until October 31, 1978, Old Cannonsburg was operated as a subsidiary of Brown–Schaefer. The remaining 2% of Old Cannonsburg was owned by Russell.

At the time Brown–Schaefer purchased its 98% interest, Russell was secretary and attorney for Old Cannonsburg as well as a member of the board of directors. Russell, however, was not actively involved in the management of Old Cannonsburg other than in his professional capacity as attorney-advisor.

During the negotiations that preceded the October 21, 1977 Agreement, the Brown Group attempted to purchase Russell's 2% interest in Old Cannonsburg.

This offer to purchase was renewed at the time the 98% stock purchase was consummated. Because he desired to retain an equity interest in Old Cannonsburg as an investment, however, Russell declined the offer on both occasions.

On October 23, 1978, the board of directors of Old Cannonsburg adopted unanimously a plan of reorganization. Pursuant to this plan, Russell was advised by letter that Brown–Schaefer desired to acquire his shares in exchange for its shares. In part, the letter read as follows:

> [R]ealizing that you have no desire to terminate your interest in ownership of the business operated by Cannonsburg Skiing Corporation, we hereby offer to trade you shares of Brown–Schaefer Corporation for your Cannonsburg Skiing Corporation common stock.
>
> . . . .
>
> Failure to accept the offer will, of course, leave Brown–Schaefer Corporation free to accomplish its purpose through other means.

On October 24, 1978, Russell accepted Brown–Schaefer's offer and surrendered his 1,857 shares of Old Cannonsburg stock for 3,233.2 shares (approximately 7%) of Brown–Schaefer's outstanding common stock. As a result, Old Cannonsburg became a wholly-owned subsidiary of Brown–Schaefer on October 24, 1978.

On the same day, a special meeting of the board of directors of Brown–Schaefer adopted a Plan of Merger of Old Cannonsburg into Brown–Schaefer. Effective October 31, 1978, Old Cannonsburg was liquidated and merged into Brown–Schaefer, and Brown–Schaefer was renamed Cannonsburg Skiing Corporation (New Cannonsburg). Thereafter, New Cannonsburg continued to operate the same business at the same location as had been operated by Old Cannonsburg.

At the time of the merger, Old Cannonsburg had a basis of $1,295,150 in its fixed assets. Immediately after the liquidation and merger, New Cannonsburg reported a stepped-up cost basis of $3,587,201.

Old Cannonsburg filed its final, amended income tax return for the short tax year from May 31, 1978 through October 31, 1978. For the 2% stock interest received from Russell, the return did not reflect any realized gain, but treated the stock exchange as a reorganization under section 368(a)(1) under which no gain would be realized and no recapture reported. New Cannonsburg also attempted to carry back net operating losses incurred during its first year of operation to offset Old Cannonsburg's net operating income for the years at issue.

Russell's individual income tax return for 1978 reported no gain on the exchange of Old Cannonsburg stock for Brown–Schaefer stock. Russell maintains that the exchange was a reorganization, and, as such, no gain had to be reported.

On December 15, 1982, the Commissioner sent New Cannonsburg a notice of liability and sent Russell a statutory notice of deficiency. Russell and New Cannonsburg challenged these notices in Tax Court. Based on the stipulated facts, however, the Tax Court upheld all of the Commissioner's deficiency determinations. The plaintiffs now appeal that decision, raising the three issues noted at the outset of this opinion. For the reasons set out below, we affirm the Tax Court's decision.

We agree with the Tax Court that New Cannonsburg may not carry back its net operating loss to offset income earned in previous years by Old Cannonsburg. Section 381(b)(3) of the Internal Revenue Code provides that a transferee corporation may not carry back a net operating loss generated in the taxable year after the transfer to a taxable year of the transferor "except in the case of an acquisition in connection with a reorganization described in subparagraph (F) of Section 368(a)(1)."

■ It should be noted that during 1977 and 1978, the years in question here, the merger of a wholly-owned subsidiary into its parent, which satisfied the requirements of a liquidation under Section 332 and to which Section 334(b)(2) does not apply, also qualified as an F Reorganization for purposes of Section 381(b)(3). *Performance Systems, Inc. v. United States*, 382

F.Supp. 525 (M.D.Tenn.1973), *aff'd per curiam*, 501 F.2d 1338 (6th Cir.1974). Here, however, the requirements of a 334(b)(2) liquidation were clearly met: Brown–Schaefer acquired the stock of Old Cannonsburg by purchase, which was a taxable event to the Goff shareholders, the plan of liquidation was adopted within two years of the purchase, and New Cannonsburg received all the Old Cannonsburg property in one distribution. *See Kansas Sand and Concrete, Inc. v. Commissioner*, 462 F.2d 805 (10th Cir.1972). In fact, it is only because it met the requirements of section 334(b)(2) that New Cannonsburg was able to step up the basis of the assets as it did.

■ Before any reorganization can be found to have occurred, however, the "continuity of interest" doctrine must be satisfied. Without a continuity of proprietary interest, there can be no tax-free reorganization. This doctrine, which has its origins in *Cortland Specialty Co. v. Commissioner*, 60 F.2d 937 (2d Cir.1932), *cert. denied*, 288 U.S. 599, 53 S.Ct. 316, 77 L.Ed. 975 (1933), seeks to distinguish tax-free reorganizations where there is a "continuity of interest on the part of the transferor or its shareholders in the properties transferred" from "the mere purchase by one corporation of the properties of another corporation." *See* Sections 1.368–2(a), Treasury Regulations on Income Tax (1954 Code) (26 C.F.R.). In the transactions here, Russell was the only shareholder in Old Cannonsburg to maintain any interest in New Cannonsburg, and that interest was a bare 7%.

To prevent easy evasions of the continuity of interest requirements, courts have developed the "step transaction" doctrine. Just last year, this Court adopted the "end result" test, holding that: "purportedly separate transactions will be amalgamated into a single transaction when it appears that they were really component parts of a single transaction intended from the outset to be taken for the purpose of reaching the ultimate result." *Brown v. United States*, 782 F.2d 559 (6th Cir.1986), remanding 600 F.Supp. 47 (W.D.Ky.1984). Using this doctrine, the Tax Court found that the purchase of 98% of Old Cannonsburg stock by the Brown Group, the exchange of Russell's shares for Brown–Schaefer stock, and the merger of Old Cannonsburg into Brown–Schaefer should be treated as one transaction. Because this determination concerns the taxpayers' intent and is a question of fact, it will not be reversed unless it is "clearly erroneous." *See Anderson v. City of Bessemer City N.C.*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Rabidue v. Osceola Refining Co.*, 805 F.2d 611 (6th Cir.1986). We are convinced, however, that the Tax Court's opinion is amply supported by the evidence. As the Tax Court noted, it is clear that the intent of the Brown Group, from the time it purchased 98% of the stock of Old Cannonsburg, was to merge Old Cannonsburg's assets into Brown–Schaefer with a stepped up basis.

We reject taxpayer's argument that there was no intent to accomplish the merger at the time the stock purchase agreement was executed. Taxpayers urge us to focus on the almost complete identity of shareholders immediately before and after the consummation of the merger as evidence that the continuity of interest doctrine has been met. To do this, however, would require us to ignore the fact that the subject of the entire transaction, Old Cannonsburg's assets, were once owned by a corporation whose shareholders have now been all but eliminated from ownership of those assets in New Cannonsburg.

We agree with the Tax Court that the integration of the various steps taken by Russell and the Brown Group, which results in a 98% shift in ownership, clearly violates the identity of shareholders and their proprietary interests as required for an F reorganization. Because the requirements for an F reorganization have not been met, the exception found in Section 381(b) is not applicable. Thus, New Cannonsburg may not carry back its losses.

■ New Cannonsburg and Russell argue that if the step transaction does indeed apply, then we should find that the requirements for a Section 368(a)(1)(B) reorganization have been met. We do not agree.

Section 368(a)(1)(B) defines such a reorganization as follows:

> The acquisition by one corporation, in exchange solely for all or part of its voting stock (or in exchange solely for all or part of the voting stock of a corporation which is in control of the acquiring corporation), of the stock of another corporation, if, immediately after the acquisition, the acquiring corporation has control of such other corporation.

As we stated earlier, however, we do not believe that the shareholders of the acquired corporation (Old Cannonsburg) maintained a substantial proprietary stake in the ongoing business enterprise (New Cannonsburg). Before the transaction, the owners of the assets were the Goff Group, with 98% of Old Cannonsburg's stock, and Russell, with 2%. After the transaction, the only original shareholder with an interest in the assets was Russell, who now held a 7% interest in New Cannonsburg.

In addition to failing to meet the continuity of interest doctrine, Russell failed to meet the requirements of Section 354(a)(1) which permits nonrecognition of gain upon the exchange of stock. Section 354(a)(1) provides that a shareholder who exchanges his stock in one corporation that is a party to a reorganization for the stock of another corporation which is also a party to the reorganization shall recognize no gain, if the exchange is pursuant to a plan of reorganization. As we have said, we believe there was no reorganization and, furthermore, we find insufficient evidence that the exchange was accomplished pursuant to a "plan of reorganization." Russell's exchange of stock was merely the last step in acquiring 100% of the Old Cannonsburg stock before it could be liquidated into Brown–Schaefer.

Because the requirements for a tax-free reorganization pursuant to Section 368(a)(1) were not met, Brown–Schaefer took a cost, rather than a carryover, basis in the stock purchased from Russell. As a result, there was increased depreciation and investment credit recapture. Furthermore, Russell must report the gain realized upon the sale of his stock.

Finally, Russell argues that under Section 351(a), his transfer of Old Cannonsburg stock for Brown–Schaefer stock should qualify for nonrecognition treatment. Section 351(a) affords nonrecognition of gain only when a person or group of persons who have contributed property to a corporation solely for stock in the transferee corporation are "immediately after the exchange ... in control (as defined in Section 368(c)) of the corporation."

Section 368(c), which defines "control," provides that at least 80% of the voting power in the transferee corporation must be possessed in order for "control" to exist. *See generally Brams v. Commissioner*, 734 F.2d 290, 292–293 (6th Cir. 1984); *Six Seam Co., Inc. v. United States*, 524 F.2d 347, 355–356 (6th Cir. 1975). We are convinced that the Tax Court properly applied these statutory requirements when it held that Russell did not meet the control test. Section 351 does not, therefore, permit the nonrecognition of Russell's gain. We agree with the Tax Court and the Commissioner that Russell's exchange of Old Cannonsburg stock for Brown–Schaefer stock cannot be amalgamated with the Brown Group's contribution of cash for Brown–Schaefer stock. In order to make such an amalgamation, we would have to find clearly erroneous the Tax Court's finding that it was not the intention of the Brown Group, at the time the transaction was entered into, to include Russell as a shareholder of Brown–Schaefer. But, as the Tax Court observed, the Brown Group's repeated efforts to purchase Russell's stock shows the lack of intent to include Russell. We believe the Tax Court's finding to be sufficiently grounded in the evidence. Accordingly, we affirm the Tax Court's decision. Russell must report his realized gain on the exchange.