DAVID GLENN EARNSHAW, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Earnshaw v. Commissioner
Docket No. 9852-93
United States Tax Court
T.C. Memo 1995-156; 1995 Tax Ct. Memo LEXIS 150; 69 T.C.M. (CCH) 2353; April 6, 1995, Filed *150 Decision will be entered for respondent. David Glenn Earnshaw, pro se. For respondent: Mark H. Howard. COUVILLION
COUVILLION
MEMORANDUM OPINION COUVILLION, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) [1] and Rules 180, 181, and 182. Respondent determined a deficiency in Federal income tax of $ 882 and the 10 percent additional tax on an early distribution from a qualified plan under section 72(t) in the amount of $ 274 for petitioner's 1990 tax year. The issues for decision are: (1) Whether $ 300, which was retained out of a 1990 distribution to petitioner by a retirement plan, qualified under section 401(a), is includable in petitioner's gross income; and (2) whether petitioner is entitled, under section 6512(b), to determination of his entitlement to a credit or refund of an overpayment of taxes for 1990. At trial, *151 petitioner conceded: (1) That $ 2,449 of a distribution he received from a qualified retirement plan during 1990 was includable in gross income; (2) that petitioner failed to report $ 28 interest income on his 1990 Federal income tax return; (3) that petitioner failed to report as income $ 1,141 unemployment compensation benefits he received during 1990; and (4) that petitioner is liable for the 10 percent additional tax under section 72(t) for whatever amount of the retirement plan distribution is includable in his gross income for 1990. Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioner was a legal resident of Salt Lake City, Utah. Petitioner is a carpenter and, during 1990, was a member of a labor union, Carpenter's Local No. 1622 at Hayward, California. Petitioner worked for various employers during 1990, and all of his employers were subject to a collective bargaining agreement with the carpenter's union, which, among other things, required employer contributions for the benefit of employee-members of the union to a qualified retirement plan that *152 was formally entitled "Carpenters Annuity Trust Fund for Northern California" (the annuity). The annuity was administered by the Carpenters Funds Administrative Office of Northern California, Inc., at Oakland, California. The parties agree that petitioner was a participant in the annuity. Under the terms of the annuity, participants were entitled to borrow from the annuity for specified purposes, one of which was for the purchase of a home, or for home improvements with respect to the employee-participant's dwelling. One of the conditions for such a loan was that a loan fee would be charged and withheld from the loan proceeds. The loan fee was $ 300 for a 5-year loan and $ 600 for a 10-year loan. The brochure explaining the terms or conditions of loans from the annuity did not explain the purposes of the loan fee. All borrowers from the annuity were required to pay interest on their loan at a rate based upon secured loans charged by the California State Employee's Credit Union. Additionally, the loan conditions further provided that, should a loan remain delinquent for more than 3 months, and, if no installment was paid by the due date of the fourth month, "the unpaid balance *153 will be considered as a PREMATURE DISTRIBUTION. Such a PREMATURE DISTRIBUTION is then required by law to be reported by the Fund to the Internal Revenue Service and the Franchise Tax Board as income to the Employee and is thereby subject to tax and possible PENALTIES to be determined by the Internal Revenue Service and the Franchise Tax Board." During 1990, petitioner borrowed $ 2,749 from the annuity to make improvements to his home. He agreed to repay the loan over 5 years. Pursuant to the loan conditions, $ 300 was retained by the annuity as payment of the loan fee. Net loan proceeds of $ 2,449 were paid to petitioner. Petitioner defaulted in the repayment of his loan, and, pursuant to the loan conditions, the annuity treated the loan as a distribution and reported the amount of the distribution, $ 2,749, to the Internal Revenue Service. Petitioner did not report the distribution on his 1990 Federal income tax return. At trial, petitioner conceded that the defaulted loan constituted a distribution and, as such, was includable in gross income. Sec. 402(a)(1). Petitioner also conceded the 10 percent additional tax under section 72(t). Petitioner's only contention is with *154 respect to the $ 300 that was paid as a loan fee to the annuity. Petitioner contends his gross income from the distribution should be $ 2,449, the amount he actually received, and that the $ 300 is not taxable. The record is not entirely clear as to whether petitioner contends the $ 300 is not includable as gross income, or whether the $ 300 is includable as gross income, but petitioner is entitled to a corresponding deduction for the $ 300. The Court considers both positions. The determinations of the Commissioner in a notice of deficiency are presumed correct, and the burden of proof is on the taxpayer to show that such determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 402(a)(1) provides that "the amount actually distributed to any distributee by any employees' trust described in section 401(a) * * * shall be taxable to him, in the year in which so distributed, under section 72 (relating to annuities)." There is no dispute that petitioner's annuity account was in the amount of $ 2,749. If petitioner had not withdrawn a loan but had instead elected a distribution, he would have received the entire *155 $ 2,749. The $ 2,749 would have constituted gross income. Instead, petitioner borrowed $ 2,749 from the annuity, and the annuity charged $ 300 as a "loan fee". Petitioner's loan, however, and his liability for repayment, was $ 2,749, plus interest. When petitioner defaulted, and what had been a "loan" became a "distribution", the amount of that distribution must necessarily be $ 2,749. The Court concludes, therefore, that petitioner's income from the distribution was $ 2,749. As to whether the $ 300 loan fee is deductible as an expense, if the loan fee was paid as compensation for services in obtaining the loan, the amount of the fee is not deductible. Trivett v. Commissioner, T.C. Memo. 1977-161, affd. 611 F.2d 655 (6th Cir. 1979). On the other hand, if the $ 300 represented a payment for the use or forbearance of money, the $ 300 could be considered "points" or interest, the deductibility of which would be governed by section 163. Under section 163(a), there shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness. Section 163(h), however, provides generally that no deduction *156 shall be allowed for "personal interest", which is defined to include all interest expense of a taxpayer other than a corporation, except for interest in any one of five categories listed in section 163(h)(2). Of these categories, the only one of relevance here is "qualified residence interest". Qualified residence interest includes, under section 163(h)(3)(A), (B), and (C), acquisition indebtedness or home equity indebtedness with respect to any qualified residence of the taxpayer. However, to qualify as either acquisition indebtedness or home equity indebtedness, the indebtedness must be secured by the taxpayer's residence. Sec. 163(h)(3)(B) and (C). In this case, petitioner's indebtedness was not secured by his personal residence. Therefore, if the $ 300 constituted "interest", it would be personal interest under section 163(h). However, petitioner presented no evidence as to the nature or character of the $ 300 loan fee. The Court concludes the $ 300 fee was not a payment for the use or forbearance of money and, therefore, is not deductible. The Court holds, therefore, that the $ 300 is includable in petitioner's gross income, and petitioner is not entitled to a deduction *157 for this amount. Petitioner alleged that he never received a refund for overpayment of his 1990 Federal income tax. Petitioner's income tax return for 1990, which was submitted into evidence, reflected a tax liability of $ 2,411, Federal taxes withheld of $ 3,712, and a claimed refund of $ 1,301. Petitioner alleged he never received a refund of this overpayment. At trial, respondent's position was that the $ 1,301 overpayment reflected on petitioner's return had been credited in the amounts of $ 368.05 and $ 932.95, respectively, to outstanding taxes owed by petitioner for 1982 and 1983, and that petitioner, in the course of the administrative consideration of his 1990 tax year, had been so advised about the $ 1,301 overpayment shown on his 1990 return. See sec. 6402(a). Petitioner presented no evidence at trial to refute respondent's position. Petitioner acknowledged having unpaid tax liabilities for prior tax years but contended those unpaid taxes had been discharged in a prior bankruptcy proceeding. This Court has jurisdiction under section 6512(a) and (b) to determine an overpayment of taxes and the amount of such overpayment to be credited or refunded for any year before *158 the Court. This Court, however, has no jurisdiction to determine whether a taxpayer's income tax deficiencies and additions to tax have been discharged in a bankruptcy proceeding. Neilson v. Commissioner, 94 T.C. 1, 8-9 (1990); Graham v. Commissioner, 75 T.C. 389, 399-400 (1980). Therefore, this Court has no jurisdiction to determine whether petitioner's unpaid tax liabilities for prior years were discharged in bankruptcy so as to entitle him to a refund of the overpayment of his 1990 income tax. The Court holds against petitioner on this issue. Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩